**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **TIMOTHY HICKS**, individually and on behalf of all others similarly situated,<br>Plaintiff,<br>v.<br>**OLLIE GRANT VENTURES LLC**;<br>**OLLIE GRANT PRIVATE WEALTH LLC**; and<br>**DOES 1–10**, inclusive,<br>Defendants. | **CASE NO. _________**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff TIMOTHY HICKS ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendants OLLIE GRANT VENTURES LLC, OLLIE GRANT PRIVATE WEALTH LLC, and DOES 1–10 (collectively, "Defendants"), and alleges as follows upon personal knowledge as to Plaintiff's own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys:

## INTRODUCTION

1. This is a consumer class action arising from Defendants' transmission of unsolicited telemarketing text messages—soliciting investments in purported "pre-IPO" shares of private companies—to Plaintiff and other consumers whose telephone numbers are listed

on the National Do-Not-Call Registry, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq. (the "TCPA"), and its implementing regulations.

2. The TCPA was enacted to protect consumers from precisely the kind of intrusive and unwanted solicitations at issue here. As the Supreme Court has recognized, "[v]oluminous consumer complaints about abuses of telephone technology . . . prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 370–71 (2012).

3. To safeguard consumer privacy, Section 227(c) of the TCPA and its implementing regulations prohibit the initiation of telephone solicitations—including marketing text messages—to residential and wireless telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, absent the subscriber's prior express invitation or permission or an established business relationship.

4. Plaintiff's cellular telephone number has been registered on the National Do-Not-Call Registry since June 10, 2023. Despite that registration, and without Plaintiff's prior express invitation or permission and in the absence of any established business relationship, Defendants sent Plaintiff at least eleven (11) unsolicited marketing text messages between December 2025 and April 2026.

5. Defendants' conduct independently violates the Colorado Consumer Protection Act, C.R.S. § 6-1-101, et seq. (the "CCPA"). Defendants are commercial telephone sellers that solicited prospective purchasers located in Colorado without first registering with the Colorado Attorney General, as C.R.S. § 6-1-303 requires—an unlawful telemarketing

practice under C.R.S. § 6-1-304(1)(a) and, by operation of C.R.S. § 6-1-105(1)(cc), a deceptive trade practice.

6. Plaintiff brings this action on behalf of himself and a proposed nationwide class and Colorado subclass, seeking statutory damages, injunctive relief, and all other available relief.

**JURISDICTION AND VENUE**

7. This Court has federal-question subject-matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because those claims arise under a federal statute, the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq.

8. This Court has supplemental jurisdiction over Plaintiff's claims arising under Colorado law pursuant to 28 U.S.C. § 1367 because those claims are so related to the federal claims that they form part of the same case or controversy, arising from the same common nucleus of operative fact—namely, Defendants' transmission of unsolicited marketing text messages to Plaintiff and the proposed class.

9. This Court has personal jurisdiction over Defendants because Defendants purposefully directed their conduct at the State of Colorado, including by transmitting the marketing text messages at issue to Plaintiff, a Colorado resident, on his cellular telephone while he was physically located in Colorado, and because Plaintiff's claims arise directly out of and relate to those forum-directed contacts.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, including Plaintiff's receipt of Defendants' unlawful text messages in this District.

## PARTIES

11. Plaintiff Timothy Hicks is, and at all relevant times was, a natural person and a resident of Denver, Colorado. Plaintiff is a "person" as defined by 47 U.S.C. § 153(39). Plaintiff was physically present in Colorado at the time he received the text messages alleged herein.

12. Defendant Ollie Grant Ventures LLC ("OGV") is, on information and belief, a Delaware limited liability company with its principal place of business at 28-10 Jackson Avenue, Long Island City, NY 11101. OGV holds itself out as a venture fund that provides investors with access to "pre-IPO" and private-market investment opportunities, and OGV identified itself by name as the sender of the text messages alleged herein. OGV is a "person" as defined by 47 U.S.C. § 153(39).

13. Defendant Ollie Grant Private Wealth LLC ("OGPW") is, on information and belief, a state-registered investment adviser (CRD No. 332010) with its principal place of business at 123 NW 4th Street, Suite 14, Evansville, Indiana 47708, and investment-adviser-representative registrations in Indiana, New York, and New Jersey. On information and belief, OGPW is the investment manager for OGV, it controls, directs, manages, and operates OGV, and the text messages alleged herein were sent by or on behalf of, and for the benefit of, both OGV and OGPW. OGPW is a "person" as defined by 47 U.S.C. § 153(39).

14. Defendants Does 1 through 10 are individuals or entities whose identities are presently unknown to Plaintiff but who participated in, directed, authorized, ratified, or are otherwise legally responsible for the conduct alleged herein, including any individuals or entities that transmitted the text messages on Defendants' behalf. Plaintiff will amend this Complaint to allege their true names and capacities once ascertained.

15. At all relevant times, each Defendant acted either directly or through its agents, and the acts and omissions of each Defendant's agents were known to, authorized by, and ratified by that Defendant.

## FACTUAL ALLEGATIONS

16. Plaintiff's cellular telephone number ending in -7849 (the "Cellular Number") has been registered on the National Do-Not-Call Registry since June 10, 2023.

17. The Cellular Number is assigned to a cellular telephone service for which Plaintiff incurs charges for incoming communications. Plaintiff uses the Cellular Number for personal, residential, and household purposes.

18. Plaintiff has never had any business relationship with any Defendant, never purchased any goods or services from any Defendant, and never provided his Cellular Number to any Defendant for any purpose. Plaintiff never gave any Defendant prior express invitation or permission to send him marketing text messages.

19. Notwithstanding the foregoing, between December 4, 2025, and April 22, 2026, Defendants sent Plaintiff at least eleven (11) unsolicited text messages to the Cellular

Number that advertised and promoted Defendants' "pre-IPO" investment opportunities and services.

20. The text messages were transmitted from telephone number (929) 299-2324 and directed Plaintiff to respond or call back at various telephone numbers, including (929) 566-5467, (929) 655-5467, and (609) 713-6043.

21. The text messages repeatedly identified the sender as "Ollie Grant Ventures" or "Ollie Grant Ventures LLC," solicited investments in purported pre-IPO shares of companies including Anduril Industries, Anthropic, SpaceX, and others, and employed urgency and scarcity tactics, references to well-known individuals, and claimed valuations and prices to induce a response.

22. The text messages constituted "telephone solicitations" and advertisements within the meaning of 47 C.F.R. § 64.1200(f) because they advertised and promoted the commercial availability and quality of Defendants' goods, services, and investment opportunities. The text messages were not sent for any emergency purpose.

23. Each of Defendants' text messages is set forth below.

24. On or about December 4, 2025, Defendants sent Plaintiff the following text message:

*"This is Will at Ollie Grant Ventures reaching out regarding an opportunity to gain access to Pre-IPO shares of Anduril Industries a direct competitor to Palantir. After being ranked #1 on CNBC Disruptor list we are preparing to close on a block of shares. We are looking to see who would like to get involved, Don't miss out. Contact me here or at 929-566-5467 Reply STOP to unsubscribe. Thanks, Ollie Grant Ventures LLC"*

25. On or about December 12, 2025, Defendants sent Plaintiff the following text message:

*"This is Will at Ollie Grant Ventures reaching out regarding an opportunity to gain access to Pre-IPO shares of Anduril Industries . After being ranked #1 on CNBC Disruptor list we just closed on a block of shares. In such high demand these won't last long. You can reach me here or at 929-566-5467"*

26. On or about December 16, 2025, Defendants sent Plaintiff the following text message:

*"A quick heads up- This is Will from Ollie Grant Ventures. Anduril Industries is believed to be one of the most anticipated IPOs of 2026, especially after the celebrated CEO's (Luckey Palmer) recent announcement of his intentions to go public. Your invitation to join this block of shares is still available, but shares are limited and moving quickly. Don't miss out. If you have any interest please reach out to me here or call me at 929-566-5467."*

27. On or about December 30, 2025, Defendants sent Plaintiff the following text message:

*"This is Will with Ollie Grant Ventures, gain access to one of the most highly anticipated IPOs in recent years. If you missed Palantir DO NOT miss out on Anduril Industries. With the Ceo recently stating they were definitely going public it has been in high demand. There is limited access remaining and the shares won't last long. Please don't hesitate to reach out here or 929-566-5467. https://www.cnbc.com/2025/06/10/anduril-palmer-luckey-ipo.html"*

28. On or about January 7, 2026, Defendants sent Plaintiff the following text message:

*"This is Will with Ollie Grant Ventures, Pre IPO shares of Anthropic AVAILABLE NOW!! With only a 1million dollar block of shares available and a current secondary raise taking place with $15million dollars being invested by NVIDIA and MICROSOFT putting them at an anticipated 350B Valuation shares won't last long. Our access is at roughly 293B. Call now if interested 929-566-5467. Reply STOP to unsubscribe. Thanks, Ollie Grant Ventures LLC"*

29. On or about January 13, 2026, Defendants sent Plaintiff the following text message:

*"Will here with Ollie Grant Ventures. Your portfolio: good. Your portfolio with SpaceX at roughly a $790B valuation (10% discount to the $800B December tender): VERY good. Why you hesitating? Here's the deal: SpaceX secondaries, Preferred shares, funding Friday, $100K minimum, institutional-grade documentation. Same company that's launching Starship, dominating satellite internet, and making NASA look slow. I'm not your mom but I will call you twice a day until you at least hear the pitch. 15 min call?" Respond here or to 609-713-6043"*

30. On or about January 21, 2026, Defendants sent Plaintiff the following text message:

*"Ollie Grant Ventures here. Hope you're doing well! We're building out our pre-IPO inventory for 2026 and want to hear from YOU. What private companies*

*would you most like to see us source shares in? Whether it's AI, fintech, biotech, consumer brands, or any other sector - we want to know what's on your radar. Reply with 1-3 companies you'd be interested in, or just let us know the sectors you're most excited about. Your feedback directly shapes our sourcing priorities. Thanks for being part of the Ollie Grant Ventures community!"*

31. On or about January 29, 2026, Defendants sent Plaintiff the following text message:

*"Ollie Grant Ventures here...Antropic access available...The people spoke and the fund listened!! We were able to secure another very small block of Anthropic. If you missed the first one do not miss this one! Access is at 305B valuation. With Anthropic just announcing a new fund raising round these won't last long. Other access: Kalshi & Erebore. If interested feel free to message here or call 929-566-5467. Cheers"*

32. On or about February 28, 2026, Defendants sent Plaintiff the following text message:

*"Ollie Grant Ventures here with another great Pre-IPO investment opportunity, Erebore!!! If you know the names Palmer Lucky, Joe Lonsdale and Peter Thiel then you know there is almost no one better to bet on in the space! Taking over the place of what Silicone Valley Bank was only positioned stronger this is not one to miss. They just received their US national banking charter and will be serving all Ai and Defense Tech start ups in the Vally. Time is a priority here and if interested please reach out here or at 929-655-5467. Reply STOP to unsubscribe. Thanks, Ollie Grant Ventures LLC"*

33. On or about March 4, 2026, Defendants sent Plaintiff the following text message:

*"Anduril Industries access is available at Ollie Grant Venturers!! With defense stocks on the rise and Anduril Industries announcing a $4b fundraising round led by Thrive Capital and Andreessen Horowitz expected to value this defense tech unicorn at approximately $60B now's the time to get involved. With an IPO suspected in the near future shares will not last long. If interested you can respond here or at 929-655-5467."*

34. On or about April 22, 2026, Defendants sent Plaintiff the following text message:

*"Ollie Grant Ventures here with a great opportunity The last great defense IPO was Raytheon - in 1922. Anduril Industries is shaping up to be the next generational moment in defense tech, and I have pre-IPO access I'd like to walk you through. Here's why it's worth 10 minutes of your time: Anduril doesn't just sell to the government - it builds the operating system for modern warfare. Lattice AI. Autonomous systems. Hardware that thinks. They've scaled from zero to billions in contracted revenue in under a decade, with DoD, SOCOM, and allied nations as customers. Valued at $30.5B+ with a post money valuation of $60B+ in current round of funding, with an IPO widely anticipated. Pre-IPO entry means*

*getting in ahead of the public pricing premium. I'm sharing this with a select group. If defense tech, deep tech, or asymmetric upside is in your wheelhouse - let's talk. If interested contact me here or at 929-566-5467 Reply STOP to unsubscribe."*

35. Plaintiff did not consent to, request, or invite any of the foregoing text messages, and no established business relationship existed between Plaintiff and any Defendant at any relevant time.

36. Defendants sent Plaintiff more than one telephone solicitation within a twelve-month period while Plaintiff's Cellular Number was registered on the National Do-Not-Call Registry and had been so registered for more than thirty-one (31) days.

37. Each text message invited Plaintiff to respond by telephone and contained representations about the price, quality, or availability of the investments, goods, services, and property Defendants offered—including claimed valuations, share availability, purported discounts, and minimum investment amounts.

38. Defendants do not appear on the Colorado Attorney General's published list of currently registered telemarketers, and, on information and belief, no Defendant was registered with the Colorado Attorney General as a commercial telephone seller at any time relevant to this action, as required by C.R.S. § 6-1-303.

39. On information and belief, no Defendant is licensed by the Colorado securities commissioner as a broker-dealer or sales representative, no Defendant's solicited securities were registered or exempt under the Colorado Securities Act as described in C.R.S. § 6-1-302(1)(a), and no other exclusion from the definition of "commercial telephone seller" set forth in C.R.S. § 6-1-302(1) applies to any Defendant.

40. On information and belief, Defendants sent substantially similar unsolicited marketing text messages to thousands of other consumers throughout the United States, including other consumers located in Colorado, whose numbers were on the National Do-Not-Call Registry, without their prior express invitation or permission and without any established business relationship.

41. Defendants' conduct was negligent and, alternatively, knowing and willful. Defendants knew or should have known that Plaintiff's number was on the National Do-Not-Call Registry, that they lacked consent or any established business relationship, and that their repeated solicitations were unlawful, yet they continued to transmit the messages—including by rotating among multiple telephone numbers.

42. As a result of Defendants' conduct, Plaintiff and the members of the Classes suffered concrete harm, including invasion of privacy, intrusion upon seclusion, nuisance, aggravation, wasted time, and the depletion of cellular resources.

## CLASS ACTION ALLEGATIONS

43. Plaintiff brings this action on behalf of himself and the following proposed nationwide Class and Colorado Subclass pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3):

**National Do-Not-Call Class:**

*All persons within the United States whose telephone number was registered on the National Do-Not-Call Registry for at least thirty-one (31) days, who did not have an established business relationship with Defendants and did not provide*

*prior express invitation or permission to Defendants, and who received more than one telephone solicitation (including a text message) by or on behalf of Defendants within any twelve-month period, at any time within four years prior to the filing of this Complaint through the date of class certification.*

**Colorado Subclass:**

*All members of the National Do-Not-Call Class who were located in Colorado when they received one or more of the telephone solicitations by or on behalf of Defendants, and who received such solicitation(s) within three years prior to the filing of this Complaint through the date of class certification.*

44. Excluded from the Classes are Defendants, their officers, directors, employees, and agents; the judicial officers assigned to this case and their staff; and Plaintiff's counsel.

45. **Numerosity (Fed. R. Civ. P. 23(a)(1)).** The Classes are so numerous that joinder of all members is impracticable. While the exact number of Class members is unknown to Plaintiff and can be ascertained through Defendants' records and the records of their agents and messaging vendors, Plaintiff is informed and believes that the Classes comprise thousands of persons. Defendants' use of templated, mass-transmitted marketing text messages indicates a broad solicitation campaign.

46. **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2), (b)(3)).** Common questions of law and fact exist as to all Class members and predominate over any questions affecting only individual members, including: (a) whether Defendants or their agents transmitted

more than one telephone solicitation, including text messages, within a twelve-month period to numbers on the National Do-Not-Call Registry; (b) whether such text messages constitute "telephone solicitations" subject to 47 U.S.C. § 227(c) and its implementing regulations; (c) whether Defendants maintained the procedures and policies required by 47 C.F.R. § 64.1200; (d) whether Defendants' violations were negligent or knowing and willful; (e) whether Defendants acted as commercial telephone sellers without registering with the Colorado Attorney General, in violation of C.R.S. §§ 6-1-303 and 6-1-304(1)(a) and constituting a deceptive trade practice under C.R.S. § 6-1-105(1)(cc); and (f) the appropriate relief, including statutory damages and injunctive relief.

47. **Typicality (Fed. R. Civ. P. 23(a)(3)).** Plaintiff's claims are typical of the claims of the Class members. Plaintiff, like each Class member, received more than one unsolicited telephone solicitation by or on behalf of Defendants within a twelve-month period while his number was on the National Do-Not-Call Registry, without consent or an established business relationship, and was injured by the same course of conduct.

48. **Adequacy (Fed. R. Civ. P. 23(a)(4)).** Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has no interests antagonistic to those of the Class, and Plaintiff has retained counsel experienced in the prosecution of complex class actions and TCPA litigation.

49. **Superiority (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages available to individual Class members are relatively small, making individual litigation

economically impracticable, and class treatment will conserve judicial resources and avoid inconsistent adjudications.

50. **Injunctive Relief (Fed. R. Civ. P. 23(b)(2)).** Defendants have acted, and refused to act, on grounds that apply generally to the Classes, so that final injunctive relief and corresponding declaratory relief are appropriate respecting the Classes as a whole.

51. The identities of the Class members are readily ascertainable from Defendants' records, the records of their agents, messaging vendors, and carriers, and the National Do-Not-Call Registry.

## FIRST CAUSE OF ACTION

### Negligent Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)

### (On Behalf of Plaintiff and the National Do-Not-Call Class)

52. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

53. The foregoing acts and omissions of Defendants constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c) and the regulations promulgated thereunder, including 47 C.F.R. § 64.1200(c), (d), and (e), and in particular 47 U.S.C. § 227(c)(5).

54. As a result of Defendants' negligent violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members are entitled to an award of up to $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(c)(5)(B).

55. Plaintiff and the National Do-Not-Call Class members are also entitled to, and seek, injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

## SECOND CAUSE OF ACTION

**Knowing and/or Willful Violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(c)**

**(On Behalf of Plaintiff and the National Do-Not-Call Class)**

56. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

57. The foregoing acts and omissions of Defendants constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c) and the regulations promulgated thereunder, and in particular 47 U.S.C. § 227(c)(5).

58. As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and the National Do-Not-Call Class members seek, and the Court may in its discretion award, an amount equal to not more than three times the amount available under 47 U.S.C. § 227(c)(5)(B)—up to $1,500.00 for each and every violation—pursuant to 47 U.S.C. § 227(c)(5).

59. Plaintiff and the National Do-Not-Call Class members are also entitled to, and seek, injunctive relief prohibiting such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A).

**THIRD CAUSE OF ACTION**

**Violations of the Colorado Consumer Protection Act, C.R.S. § 6-1-101, et seq.**

**(On Behalf of Plaintiff and the Colorado Subclass)**

60. Plaintiff incorporates by reference each of the foregoing paragraphs as though fully set forth herein.

61. The CCPA prohibits deceptive trade practices committed in the course of a person's business, vocation, or occupation. Under C.R.S. § 6-1-105(1)(cc), a person engages in a deceptive trade practice when the person "[e]ngages in any commercial telephone solicitation which constitutes an unlawful telemarketing practice as described in section 6-1-304."

62. Under C.R.S. § 6-1-304(1)(a), a commercial telephone seller engages in an unlawful telemarketing practice when, in the course of any commercial telephone solicitation, the seller "[c]onducts business as a commercial telephone seller without having registered with the attorney general, as required by section 6-1-303."

63. Under C.R.S. § 6-1-303(1), no commercial telephone seller may conduct business in Colorado without having registered with the Colorado Attorney General at least ten days prior to the conduct of such business, and a commercial telephone seller "conducts business in this state if the telephone solicitations of prospective purchasers are made from locations in this state or solicitation is made of prospective purchasers located in this state."

64. Each Defendant is a "commercial telephone seller" within the meaning of C.R.S. § 6-1-302(1) because, in the course of its business, vocation, or occupation, on its own behalf or on behalf of another person, it caused or attempted to cause commercial telephone solicitations to be made, and no exclusion set forth in C.R.S. § 6-1-302(1)(a)–(t) applies.

65. Defendants' text messages were "commercial telephone solicitations" within the meaning of C.R.S. § 6-1-302(2), including because they were unsolicited communications initiated by or on behalf of Defendants for the purpose of inducing recipients to purchase or invest in goods, services, or property, C.R.S. § 6-1-302(2)(a), and because each was a communication that included representations about the price, quality, or availability of goods, services, or property and invited a response by telephone. C.R.S. § 6-1-302(2)(c).

66. Defendants conducted business in Colorado within the meaning of C.R.S. § 6-1-303(1) because their solicitations were made of prospective purchasers—including Plaintiff and the Colorado Subclass members—located in Colorado.

67. Defendants conducted business as commercial telephone sellers in Colorado without having registered with the Colorado Attorney General, in violation of C.R.S. § 6-1-303(1). Each commercial telephone solicitation Defendants made or caused to be made while

unregistered constituted an unlawful telemarketing practice under C.R.S. § 6-1-304(1)(a) and, accordingly, a deceptive trade practice under C.R.S. § 6-1-105(1)(cc).

68. Defendants committed these deceptive trade practices in the course of their business, vocation, or occupation.

69. Defendants' deceptive trade practices significantly impact the public as actual or potential consumers of Defendants' goods, services, and property. Defendants directed a mass, templated text-message solicitation campaign at numerous consumers in Colorado and throughout the United States, soliciting members of the public to make six-figure investments through an unregistered telemarketing operation.

70. Plaintiff and the Colorado Subclass members are actual or potential consumers of Defendants' goods, services, and property within the meaning of C.R.S. § 6-1-113(1)(a), as Defendants solicited each of them to purchase and invest through the text messages at issue.

71. Plaintiff and the Colorado Subclass members suffered injury in fact to a legally protected interest as a result of Defendants' deceptive trade practices, including invasion of privacy, intrusion upon seclusion, nuisance, lost time, and the occupation and depletion of their telephone service and resources, and those injuries were caused by Defendants' deceptive trade practices.

72. As a result of Defendants' deceptive trade practices, Plaintiff, individually, is entitled to relief under C.R.S. § 6-1-113(2), including the greater of: (i) his actual damages, including prejudgment interest; (ii) five hundred dollars ($500.00); or (iii) three times his actual

damages if it is established by clear and convincing evidence that Defendants engaged in bad-faith conduct, plus costs and reasonable attorney fees. In a certified class action, Plaintiff and the Colorado Subclass are entitled to recover actual damages, injunctive relief allowed by law, and reasonable attorney fees and costs pursuant to C.R.S. § 6-1-113(2.9).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Classes, respectfully requests that the Court enter judgment against Defendants, jointly and severally, and award the following relief:

a. An order certifying this action as a class action pursuant to Federal Rule of Civil Procedure 23, appointing Plaintiff as class representative, and appointing Plaintiff's counsel as class counsel;

b. On the First Cause of Action, statutory damages of up to $500.00 for each negligent violation of 47 U.S.C. § 227(c), pursuant to 47 U.S.C. § 227(c)(5)(B), on behalf of Plaintiff and each National Do-Not-Call Class member;

c. On the Second Cause of Action, an award, in the Court's discretion, of up to three times the amount available under 47 U.S.C. § 227(c)(5)(B)—up to $1,500.00 per knowing and/or willful violation—pursuant to 47 U.S.C. § 227(c)(5), on behalf of Plaintiff and each National Do-Not-Call Class member;

d. On the First and Second Causes of Action, injunctive relief pursuant to 47 U.S.C. § 227(c)(5)(A) prohibiting Defendants from engaging in the unlawful conduct alleged herein;

e. On the Third Cause of Action: for Plaintiff individually, the greater of his actual damages (including prejudgment interest), $500.00, or three times his actual damages upon clear and convincing evidence of bad-faith conduct, pursuant to C.R.S. § 6-1-113(2); for the Colorado Subclass, actual damages and injunctive relief pursuant to C.R.S. § 6-1-113(2.9); and costs and reasonable attorney fees;

f. Pre- and post-judgment interest as allowed by law;

g. Reasonable attorney fees and costs of suit as allowed by law; and

h. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment to the Constitution of the United States and Federal Rule of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated: June 30, 2026

Respectfully submitted,

**LAW OFFICES OF TODD M. FRIEDMAN, P.C.**

By: /s/ Todd M. Friedman
Todd M. Friedman, Esq.
23586 Calabasas Rd., Suite 105
Calabasas, CA 91302
Tel: (323) 306-4234
E-mail: tfriedman@toddflaw.com